UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **LARRY DAVID LEGAN** | **CIVIL ACTION NO. 5:25-cv-0151** |
| **VERSUS** | **MAG. JUDGE KAYLA D. MCCLUSKY** |
| **TRAVIS HARGRAVE ET AL** | |

## RULING

Before the Court for ruling[1] are two motions filed by Defendants Travis Hargrave ("Hargrave"), Diamond Realty & Associates LLC ("Diamond Realty"), and Diamond Property Management LLC ("Diamond Property") (collectively, "Defendants"). First, Defendants move the Court to take judicial notice of exhibits from Plaintiff Larry David Legan's ("Legan") underlying bankruptcy proceedings. [doc. #11]. Second, they filed a Motion for Summary Judgment [doc. #12].

For the following reasons, the motions [docs. #11, 12] are **GRANTED**.

## BACKGROUND

Legan brought suit against Defendants for breach of contract and violations of the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, *et seq,* in the 26th Judicial District Court, Bossier Parish, Louisiana on August 24, 2022. [doc. #1]. Legan alleged that he entered into a contract with Defendants in 2010 which was subsequently amended in 2014. *Id*. Legan further alleged that, under this contract, as amended, Defendants were obligated to pay him

---

[1] This case was originally assigned to District Judge Jerry Edwards and to the undersigned as magistrate judge. However, after removal, the parties to consented to proceed before me, and the case was referred. [docs. #9, 14 & 17].

monthly installments of $4,000 for the duration of his life plus payments to his heirs in the same amount for five years following his death. *Id*. Legan alleged that these payments were made in full until September 15, 2019, at which time Defendants began making payments for less than the agreed-upon amount. *Id*. During Legan's deposition on January 28, 2025, Defendants became aware that Legan had previously filed for bankruptcy. *Id*. Legan filed a voluntary bankruptcy proceeding on June 10, 2020, and received a Chapter 7 Bankruptcy discharge on September 9, 2020. [docs. #1, 1-3].

Defendants filed a Notice of Removal on February 7, 2025, alleging that jurisdiction was proper in federal court under 28 U.S.C § 1334. [doc. #1]. Defendants allege that the underlying bankruptcy case filed by Legan in 2020 makes the instant suit a "civil proceeding[] arising under title 11, or arising in or related to cases under title 11." [doc. #1 (quoting 28 U.S.C. § 1334)]. Defendants argue that the "contracts and claims and causes of action asserted by Legan in the State Court Suit existed before and on the date that the Bankruptcy Proceeding was filed," and, thus, they ultimately "were property of Legan's bankruptcy estate under 11 U.S.C. § 541." [doc. #1, p. 3].

On April 8, 2025, Defendants filed the instant motion requesting this Court take judicial notice of several documents filed in Legan's 2020 bankruptcy proceedings. [doc. #11]. Defendants argue that the documents are public records of which the Court may take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence. *Id*.

On that same day, Defendants filed the instant Motion for Summary Judgment arguing that Legan's claims are barred by judicial estoppel based on the bankruptcy documents. [doc. #12-27]. Defendants argue that Legan was required to disclose the potential income from the contract with Defendants as a part of his bankruptcy proceedings and failed to do so. *Id*. at 4.

Because the claims in this lawsuit are inconsistent with Legan's previous claims to the Bankruptcy Court and would be advantageous to Legan, Defendants argue Legan should be estopped from pursuing the breach of contract claim. *Id*.

Legan did not file an opposition to Defendants' motion requesting the Court take judicial notice of proffered documents, and the time to do so has elapsed.

On May 7, 2025, Legan filed an opposition to Defendants' Motion for Summary Judgment arguing that he should not be estopped from pursuing the breach of contract claim because of his alleged failure to disclose. [doc. #21, p.19]. Legan further argues that his failure to include the contractual income was not advantageous to him as it prevented the trustee from taking the "necessary steps to pursue collection of the amounts due from the Defendants." *Id*.

Legan additionally argues that Defendants have presented inconsistent claims by seeking dismissal in this Court while also moving to reopen the bankruptcy proceedings. *Id*. Specifically, Legan argues that the granting of Defendants' judicial estoppel claim would mean "the creditors in the Legan Bankruptcy are going to be victimized twice." *Id*. at 22. Legan argues that allowing the trustee to pursue the claims against Defendants on behalf of the creditors would be the most equitable remedy.

Finally, Legan argues that the doctrine of unclean hands should apply as Hargrave "made untrue statements in his affidavit by claiming that there were modifications to the Diamond Property Agreement when there were none and when he claimed that he was not planning on paying Legan money for doing nothing." *Id.* at 20. Given Hargrave's later acknowledgement that the statements were incorrect, [doc. #21-8, pp. 95-98], Legan argues that it would be inequitable to allow Defendants to prevail when they, through Hargrave, misled the state court

3

with incorrect sworn statements when the hearing on the Plaintiff's Motion for Summary Judgment was held in state court.

Defendants filed a reply on May 13, 2025, arguing that their Motion for Summary Judgment is against Legan alone, not the trustee for his bankruptcy case, which leaves the trustee free to pursue this claim. [doc. #22]. Additionally, Defendants argue that Legan's concealment of the contract in the bankruptcy proceedings was not inadvertent and was advantageous. *Id*. Specifically, Defendants reiterate that the inclusion of the contractual income would have required Legan to file for Chapter 13 bankruptcy, rather than proceeding with a Chapter 7 bankruptcy case. *Id*; [doc. #12-27, p. 22].

The motions are ripe.

## LAW AND ANALYSIS

**I.     Motion to Take Judicial Notice**

First, the Court will consider Defendants' request to take judicial notice in order to determine whether the attached documents may be considered as part of the Motion for Summary Judgment. Defendants ask the Court to take judicial notice of twenty-one documents, all of which are filed docket entries from Legan's Bankruptcy case. [doc. #11, p. 1-2] (citing Bankr. W.D. AR, Case No. 6:20-bk-71376)[2]. Defendants argue that the Court may take notice of these documents are because "[t]he existence of Exhibits 1 through 21, the contents thereof, and the facts established thereby, are facts that are not subject to reasonable dispute because they

---

[2] Exhibits 1-18 are individual sections of Legan's Voluntary Petition for Individuals Filing for Bankruptcy docketed as Doc. Entry No. 1. Exhibit 19 is the Notice of Chapter 7 Bankruptcy Case – No Proof of Claim Deadline docketed as Doc. Entry No. 4. Exhibit 20 is the entirety of the docket sheet for Legan's bankruptcy case. Exhibit 21 is the Order of Discharge docketed as Doc. Entry No. 15.

can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, that is, from Public Access to Court Electronic Records." [doc. #11, p. 3].

Rule 201(b) of the Federal Rules of Evidence provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. FED. R. EVID. 201(b). The Advisory Committee Notes for subdivision (b) further explain: "The usual method of establishing adjudicative facts is through the introduction of evidence, ordinarily consisting of the testimony of witnesses. If particular facts are outside the area of reasonable controversy, this process is dispensed with as unnecessary. A high degree of indisputability is the essential prerequisite." *Id*.

With this legal standard in mind, the Court finds that the documents presented are of the indisputable nature contemplated by Rule 201. Matters of public record are certainly of this nature. *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (holding it is proper for a court to take judicial notice of matter of public record at even preliminary stages of litigation, such as deciding a Rule 12(b)(6) motion); *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 408 n.7 (5th Cir. 2004) (discussing doctrine of judicial notice under which one court may take notice of another court's judicial actions, including records of litigation); *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829-31 (5th Cir. 1998); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). Bankruptcy proceedings and related court filings are considered to be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b); *see also Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

As such, the Defendants' motion requesting the Court take judicial notice of the documents related to Legan's bankruptcy proceedings is GRANTED.

## II. Motion for Summary Judgment

Based on the admitted bankruptcy documents, Defendants next argue that Legan's claims should be dismissed as there are no genuine issues of material fact, and they are entitled to summary judgment as a matter of law based on the doctrine of judicial estoppel. [doc. #12].

### A. Legal Standard

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if a reasonable fact finder could render a verdict for the nonmoving party based on the available evidence. *Id*. at 248-49. To avoid summary judgment, the non-moving party must establish "the existence of [all essential elements of] that party's case [for] which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Failure to prove "an essential element" of the non-movant's case "necessarily renders all other facts immaterial." *Id*. at 323.

To properly support a motion for summary judgment, the moving party must identify portions of "the pleadings, depositions, answers to interrogatories, and admissions on file" which demonstrate the absence of a genuine issue of material fact. *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002) (quoting FED. R. CIV. P 56(c)). This absence is shown by exhibiting that the record contains no support for the non-moving party's claim. *Stahl*, 283 F.3d at 263. To rebut a properly supported motion for summary judgment, the non-moving party

must show, with "significant probative evidence," that a genuine issue of material fact exists. *Atkins v. Szymczak*, 710 Fed.App'x. 223, 224 (5th Cir. 2018) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Anderson*, 477 U.S. at 249. Similarly, if the non-movant is unable to identify anything in the record to support his claim, summary judgment is appropriate. *Stahl*, 283 F.3d at 263. While courts will "resolve factual controversies in favor of the [non-moving] party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Johnson v. Cooper T. Smith Stevedoring Co., Inc.*, 74 F.4th 268, 275 (5th Cir. 2023) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). When analyzing a motion for summary judgment, "[t]he court need consider only the cited materials, but it may [also] consider other materials in the record." FED. R. CIV. P. 56(c)(3). Courts "may not make credibility determinations or weigh the evidence," and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013).

### B. Judicial Estoppel

Judicial estoppel is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position. *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999). The purpose of the doctrine is to protect the integrity of the judicial process, by preventing parties from playing fast and loose with the courts to suit the exigencies of self-interest. *Id.* Because the doctrine is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary. *Id.* "The doctrine is generally applied where intentional

self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Id.* (quoted source omitted).

Judicial estoppel requires proof of the following, "(1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently." *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (citation omitted). Relevant to this matter, the first element is satisfied where a party failed to amend a bankruptcy petition to disclose a claim he or she pursued after filing the petition. *Fornesa v. Fifth Third Mortg. Co.*, 897 F.3d 624, 627 (5th Cir. 2018). This is consistent with Fifth Circuit precedent making clear that the duty to disclose claims in bankruptcy proceedings is an ongoing obligation. *Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566, 573 (5th Cir. 2015); *In re Coastal Plains, Inc.*, 179 F.3d at 207-08 ("Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*"); *Kane v. National Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008). In fact, the debtor need not even know all the facts or the legal basis for the cause of action. *In re Coastal Plains, Inc.*, *supra*. (citation omitted). Failing to disclose a claim impliedly represents to the bankruptcy court that the debtor's financial status remained unchanged, and this representation is plainly inconsistent with a subsequent assertion of the undisclosed claim. *See Fornesa*, 897 F.3d at 628.

Relatedly, the second element is met where the bankruptcy court implicitly accepted the debtor's representation by operating as though his or her financial status was unchanged. *Id.*

Last, to establish a defense of inadvertence, a party has to prove (1) that he or she did not know about the inconsistency or (2) that he or she lacked a motive for concealment. *Id.*

8

As stated above, Defendants contend that Legan is judicially estopped from pursuing his breach of contract claims against them because he failed to disclose the claims in his bankruptcy case. [doc. #12-27]. Legan filed for Chapter 7 bankruptcy protection on or about June 10, 2020. [doc. #21-1]. When he filed suit in 2022 in state court, however, Legan asserted a breach of contract claim against Defendants based on their allegedly improper reduction in payments to him beginning in September of 2019, nearly a full year before he was granted a discharge of his debt. [docs. #1, 11]. Thus, he was aware of his claims at the time he filed his bankruptcy Petition and did not close them. Further, he never amended his property schedule to add these potential claims prior to the September 9, 2020 closure of his bankruptcy case. The bankruptcy court discharged Legan's debt in reliance upon his alleged lack of income, which, in turn, was premised on the value of his disclosed assets. In short, although Legan's bankruptcy case is now closed, his cause of action arose prior to the filing of the Petition. Because Legan failed to disclose his potential claim against Defendants to the Bankruptcy Court before filing the instant suit in 2022, and the Bankruptcy Court relied on his lack of assets in granting his discharge, judicial estoppel's first and second prongs are satisfied.

Nevertheless, judicial estoppel may not apply if Legan's failure to disclose was inadvertent **or** if he lacked motive to conceal the claim. With regard to inadvertence, a bankruptcy petitioner's "lack of awareness of [a] statutory disclosure duty for its [legal claims] is not relevant." *Jethroe*, 412 F.3d at 600. (citation omitted). "[T]he controlling inquiry, with respect to inadvertence, is the knowing of facts giving rise to inconsistent positions." *Jethroe*, 412 F.3d at 600. When it comes to a legal cause of action, "[t]he debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that [he] may have a possible cause of action, then that is a 'known' cause of action such

9

that it must be disclosed." *In re Coastal Plains, Inc.*, 179 F.3d at 210 (citation omitted). "Any claim with potential must be disclosed, even if it is contingent, dependent or conditional." *Id*.

Legan argues that his failure to disclose was inadvertent and based on his attorney's advice that royalties were not considered part of income. [doc. #21, p. 19]. However, beginning in 2019, once Defendants reduced payments to Legan, he was aware of facts giving rise to a breach of contract claim that he ultimately asserted against Defendants in state court after his bankruptcy case was closed. Moreover, even if he was not aware of the allegedly insufficient payments, he knew he was entitled to these payments in 2020 when he filed for bankruptcy. If Legan was advised that he did not have to disclose Defendants' payments as income, he also failed to report the contractual payments in his property schedule as royalties or annuities. Moreover, once Legan filed the state suit against Defendants in 2022, he was certainly aware of his claim based on the reduced payments. Nevertheless, Legan did not move to reopen his bankruptcy case to disclose the asset.

As the Fifth Circuit has explained:

> . . . the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own interest in a separate proceeding.

*In re Coastal Plains, Inc.*, 179 F.3d at 208. Viewing the totality of the facts and circumstances herein, Legan cannot establish that his failure to disclose was inadvertent.

The Court considers, however, whether Legan can establish, in the alternative, that he had no motive to conceal the income. In that regard, Legan argues that he lacked motive because "the bankruptcy trustee would have taken the necessary steps to pursue collection of the amounts due [to him] from the Defendants." [doc. #21, p. 19]. That argument, too, is unpersuasive. Indeed, that this the precise problem. Without knowledge of the potential income from either the contract

payments or the claim to be pursued against Defendants, the Trustee was prevented from pursuing additional amounts for the estate. Without this information about additional monies to be collected—one way or the other—the Bankruptcy Court allowed Legan's case to move under Chapter 7, as a liquidation, rather than considering whether to convert his case to a reorganization under Chapter 13. [doc. #12-27, p. 18]. Either avenue or inquiry presents clear motive for Legan to have purposefully concealed the contract and any potential claims he had under it. He was allowed to discharge his debts and then, shortly after discharge, pursue his claim against Defendants on his own behalf without consideration of his prior creditors.

Finally, the Court addresses Legan's arguments that granting summary judgment to Defendants prevents the trustee from pursuing the claim, causing further harm Legan's creditors, and that Defendants' own unclean hands should preclude the application of judicial estoppel. First, the Court finds that only Legan, not the trustee, is estopped from pursuing the present claim against Defendants. The Fifth Circuit has held that "while a debtor may be estopped from pursuing the claim on his own behalf, his bankruptcy trustee is not similarly estopped and may pursue the claim for the benefit of the creditors." *Wal-Mart Stores, Inc. v. Parker (In re Parker)*, 789 F. App'x 462, 464 (5th Cir. 2020); *see also Reed v. City of Arlington*, 650 F.3d 571, 579 (5th Cir. 2011) (en banc); *In re Flugence*, 738 F.3d 126, 128 (5th Cir. 2013). "This approach 'protect[s] the integrity of the bankruptcy system by deterring debtors from concealing assets' while also being 'consistent with the core bankruptcy goal of obtaining a maximum and equitable distribution for creditors.'" *(In re Parker)*, 789 F. App'x at 464 (quoting *Reed*, 650 F.3d at 577). In keeping with this precedent, the Court finds that summary judgment in Defendants' favor will not interfere with the ability of Legan's creditors to find proper recompense through the bankruptcy trustee. Further,

11

the reopening of Legan's bankruptcy case is not inconsistent with Defendants' current pleadings and is necessary to ensure that the trustee may pursue these claims in Legan's stead.[3]

Finally, with regard to Hargrave's prior sworn statements, the Court is not persuaded that his now-corrected statements bar summary judgment in Defendants' favor. "The doctrine of unclean hands allows a court to bar recovery when a party asserting an equitable claim against another can be shown to have engaged in fraud or bad faith behavior with that person." *Kansas City S. R. Co. v. Pilgrim's Pride Corp.*, Civ Action No. 06-0003, 2010 U.S. Dist. LEXIS 30260, 2010 WL 1293340, at *11 (W.D. La. Mar. 29, 2010); *Ezell v. Payne*, No. 16-1166, 2017 U.S. Dist. LEXIS 31809 (W.D. La. Jan. 31, 2017). Assuming *arguendo* that Hargrave's statements constitute fraud or bad faith, Defendants are not asserting any claims, equitable or otherwise, against Legan. Further, the Fifth Circuit has made clear the doctrine is "intended to protect the judicial system, rather than the litigants." *Jackson v. Goins Underkofler Crawford & Langdon, L.L.P. (In re Jackson)*, 574 F. App'x 317 (5th Cir. 2014) (holding that the doctrine of judicial estoppel is not precluded by a litigant's unclean hands); *see also In re Coastal Plains, Inc.*, 179 F.3d at 205. Accordingly, the doctrine is inapplicable under the facts of this case.

In sum, the Court finds that there is no genuine issue of material fact for trial and that Legan (but not his bankruptcy trustee) is judicially estopped from asserting his present claims against Defendants. Accordingly, Defendants are entitled to summary judgment in their favor.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants' motion requesting the Court take judicial notice [doc. #11] is **GRANTED**. **IT IS FURTHER ORDERED, ADJUDGED,**

---

[3] Defendants have moved to reopen Legan's bankruptcy case and have made clear they do not seek judgment against the bankruptcy trustee. See Bankr. W.D. AR, Case No. 6:20-bk-71376, docs. #18, 28, 37, & 43.

**AND DECREED** that Defendants' Motion for Summary Judgment [doc. #12] is **GRANTED,** and Legan's claims against Defendants are **DISMISSED WITH PREJUDICE**.[4]

In Chambers, at Monroe, Louisiana, on this 24th day of February, 2026.

_____
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

---

[4] This is without prejudice to the bankruptcy trustee should he choose to pursue this claim on behalf of Legan's creditors.